### PACIFIC STATES LIFE INS. CO. v. GILL et al. (CORN BELT BANK, Intervener).

### No. 5131.

Circuit Court of Appeals, Seventh Circuit.
June 13, 1934.

E. R. Elliott, of Chicago, Ill., for appellant.

John H. Page, of Rockford, Ill., for appellee Genevieve P. Gill.

Shelby L. Large, of Rockford, Ill., for appellee Corn Belt Bank.

Before ALSCHULER, EVANS, and FITZHENRY, Circuit Judges.

EVANS, Circuit Judge (after stating the facts as above).

The Chicago National Life Insurance Company, on September 28, 1931, borrowed $3,000 of Gill and deposited as security a certain note and mortgage for $12,500, known as the Schultz mortgage. This loan became due in five days, and upon its maturity a new loan, payable in twenty-five days, was made for the same amount and secured by the same collateral. At the same time a check, payable to Gill, was drawn by the Chicago National Life Insurance Company on the Saybrook Bank to pay the first loan. This check was certified by the cashier of said bank, but the bank closed before the check was presented. The first loan, however, was subsequently paid by the insurance company.

The instant suit involves a controversy arising out of the second loan and more particularly the refusal of Gill to deliver to appellant the Schultz note and mortgage. The second note, and the check executed by Gill, bore date of October 6, or three days subsequent to the actual transaction. This postdating was in order to make sure that the check drawn by the insurance company would be cashed upon presentation.

When the insurance company made good its first check, it desired the return of the mortgage security which had been deposited. Appellee Gill refused to turn over the security because of the second loan. An agreement was reached, however, which was reduced to writing, the important parts of which read as follows:

"Now, Therefore, it is agreed by and between the parties hereto that if and when said checks last described clear and the proceeds are deposited to the account of Second Party, said Second Party will cause to be released and forwarded by registered mail to First Party the following described collateral:

"A promissory note in the sum of $12,-500.00 signed by Annie L. and Louis Schultz, dated July 3, 1929.

"1 Trust Deed securing same, signed by the same parties, to the Chicago National Life Insurance Co., Trustee.

"Two Interest Coupon notes #5 and #6 of the same date between the same parties, each in the sum of $375.00.

"It is further agreed by and between the parties hereto that upon the release of and delivery of the aforesaid Three Thousand * * * Dollar check returned 'N.S.F.' to Second Party herein, Second Party will return and deliver cancelled to First Party the aforesaid principal note in the sum of Thirty Two Hundred * * * Dollars."

Appellee Gill refused to carry out the written agreement by her made to return the collateral because, as she claims, she was induced to sign the agreement upon the false and fraudulent representations made at the time of its execution by the representative of the insurance company. Upon this issue the court found:

"* * * The Chicago National Life Insurance Company at said conference, through its agents stated to the defendant, Genevieve P. Gill, that it desired to discontinue and terminate the loan of October 6, 1931 and desired the return of the Schultz mortgage. The defendant, Genevieve P. Gill, would not agree to return the Schultz mortgage unless her check for $3,000, dated October 6, 1931 had not been negotiated and could be returned to her. The Chicago National Life Insurance Company, through its agents then and there stated that said check had not been negotiated and was in possession of the Chicago National Life Insurance Company and would be returned immediately to the defendant, Genevieve P. Gill. Acting upon this representation * * * Gill signed the contract. * * * The representations concerning the negotiation of the said Gill check and concerning the possession of it by the Chicago National Life Insurance Company were untrue in this, that said check had been negotiated and said check was not in the possession of the Chicago National Life Insurance Company and that said statements made by the Chicago

National Life Insurance Company through its agent as aforesaid, were known to be untrue and were made with the intent to deceive the defendant, Genevieve P. Gill, and to obtain her signature to said contract known as Exhibit 1. The defendant, Genevieve P. Gill, executed said contract * * * in good faith relying on the truth of the statements so made to her as to the negotiation and as to the possession of said check."

While the suit was pending the Corn Belt Bank was permitted to intervene, and it sought relief based upon the fact that it had paid the Gill check which the insurance company had falsely represented was in its possession and had not been transferred. Gill stopped payment on the check before it was presented to the bank upon which it was drawn, and the Corn Belt Bank claimed it was a holder in due course and demanded payment from Gill of the amount represented by the check.

When the rather involved statement of facts is analyzed, little difficulty is experienced in disposing of the issues presented. In fact determination of this appeal turns largely upon the question of whether the evidence suppor's the findings. The important findings, aside from the one above set forth, are:

"The collateral given by plaintiff as security for said second note of plaintiff, dated October 6, 1931, and now in the hands of the Clerk of this Court still stands as security for the payment of said note.

"Plaintiff is indebted to Genevieve P. Gill for the principal and interest due under said Second note; and Genevieve P. Gill is liable to the Corn Belt Bank for the amount of her check in the sum of $3,000.00 and dated October 6, 1931."

 In the absence of any agreement to the contrary it is clear that the Schultz mortgage was given to Gill as security for the loan. Gill's check to the insurance company evidenced the loan. Until she is released from liability, her right to hold the security can not be successfully challenged.

The evidence, we think, clearly showed her liability on the outstanding check to the Corn Belt Bank, which the said bank acquired in the usual course of business. She was therefore indebted to this bank, as the court found, and the decree in favor of said bank against her was proper. As she was indebted to the bank in this sum, which indebtedness arose by reason of the insurance company's depositing the check, the insurance company's loan from her remained in force and was unsatisfied.

Nor do we see force in the argument that the agreement changed the rights and liabilities of the parties. Gill's signature thereto was obtained through false and fraudulent representations which she relied on and believed to be true. The evidence amply supports the finding of the court in this respect. Nor can we accept appellant's contention that the agreement was a divisible one, only part of which should fall because of the fraud and the other part should stand. We agree with the District Court that the agreement was an indivisible one and either stood or fell in toto.

The decree is affirmed.